[Cite as *State v. Black*, 2022-Ohio-3119.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| v. | : | No. 22AP-180<br>(C.P.C. No. 19CR-611) |
| Stevie L. Black, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on September 6, 2022

**On brief:** *G. Gary Tyack*, Prosecuting Attorney, and *Darren M. Burgess.*

**On brief:** *Stevie L. Black*, pro se.

APPEAL from the Franklin County Court of Common Pleas

SADLER, J.

{¶ 1} Defendant-appellant, Stevie L. Black, appeals pro se from a decision of the Franklin County Court of Common Pleas denying his petition to vacate his convictions. For the following reasons, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} The facts leading to Black's convictions and sentence are described in our decision affirming the convictions and sentence on direct appeal. *State v. Black*, 10th Dist. No. 19AP-637, 2021-Ohio-676, ¶ 2-14. To briefly summarize, Black was indicted on one count of kidnapping, one count of rape, and two counts of robbery. *Id.* at ¶ 2. The victim, A.S., testified at a jury trial that she frequently used a WiFi connection originating from the

Sandpebble Lounge ("Sandpebble"), near the trailer park where she lived. *Id.* at ¶ 4. To reach a path leading to the back of the Sandpebble, A.S. had to cross an open field between the trailer park and the Sandpebble. The path leading to the back of the Sandpebble was bordered by thick, tall brush. *Id.* A.S. testified that on the morning of September 25, 2018, Black approached her while she was standing near the path leading to the Sandpebble. She testified she had never seen Black before. *Id.* at ¶ 5. Black called to her and, when A.S. approached, he shoved her to the ground and pulled off her leggings. He then climbed on top of her and inserted his penis into her vagina. *Id.* After the assault ended, A.S. fled to her trailer and put her leggings into a plastic bag. *Id.*

{¶ 3} A.S. returned to the Sandpebble approximately one hour later and again encountered Black; he stole her purse, which contained her cell phone and other belongings. *Id.* at ¶ 6. A.S. claimed she and her boyfriend also encountered Black the following day when they were leaving a nearby grocery store. It was cold and rainy, and Black offered A.S. his jacket. A.S. took the jacket home and placed it in a separate plastic bag. *Id.* at ¶ 8. A.S. reported the rape to police that evening. *Id.* The officer who responded to A.S.'s report and took custody of the leggings and jacket testified at trial. *Id.* at ¶ 9. The sexual assault detective who investigated the incident also testified at trial. *Id.* at ¶ 10. Black did not call any witnesses or testify in his own defense. *Id.* at ¶ 14. The jury convicted Black of rape and kidnapping but acquitted him of the robbery charges. *Id.* at ¶ 14. On August 29, 2019, the trial court entered a judgment entry merging the rape and kidnapping convictions, sentencing Black to 11 years of incarceration, and classifying him as a Tier III sexual offender. *Id.* at ¶ 14.

{¶ 4} Black appealed, asserting the trial court erred by denying his Crim.R. 29 motion for acquittal, that the verdicts were against the manifest weight of the evidence, and

that the trial court erred by failing to adequately explain his sex offender registration duties. *Id*. at ¶ 15.   This court affirmed the trial court's judgment, concluding the evidence was sufficient to support the convictions, the convictions were not against the manifest weight of the evidence, and the trial court provided the required notices regarding Black's sex offender classification. *Id*. at ¶ 24, 36, 46.  The Supreme Court of Ohio declined to accept jurisdiction over Black's further appeal.  *State v. Black*, 164 Ohio St.3d 1403, 2021-Ohio-2742.

{¶ 5}   On February 8, 2022, Black filed a pro se petition to vacate his convictions, asserting he received ineffective assistance of trial and appellate counsel and the state failed to produce exculpatory evidence.  The state filed a memorandum in opposition, arguing Black's petition was untimely and that he failed to present excusable reasons for the untimely filing.  The trial court denied Black's petition to vacate without conducting an evidentiary hearing.  Black timely appealed the trial court's denial.

## II.  ASSIGNMENTS OF ERROR

{¶ 6}   Black assigns the following as trial court error:

[1.] The trial court abused its discretion when denying appellant's motion to vacate or set aside conviction without an evidentiary hearing.

[2.] Appellant was prejudicially denied due process and a fair trial due to the intentional withholding of *Brady* material evidence.

[3.] Appellant was deprived of his Sixth Amendment guarantees as a result of trial counsel's failure to investigate and deficient performance rendering the jury trial fundamentally unfair.

## III.  STANDARD OF REVIEW

{¶ 7}   A person convicted of a criminal offense "who claims that there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States" may file a petition

asking the trial court to vacate the judgment or sentence. R.C. 2953.21(A)(1)(a)(i). Our review of a trial court's decision to dismiss a postconviction relief petition without a hearing involves a mixed question of law and fact, in which we " 'apply a manifest weight standard in reviewing a trial court's findings on the factual issues underlying the substantive grounds for relief, but we must review the trial court's legal conclusions de novo.' " *State v. Vinson*, 10th Dist. No. 20AP-536, 2021-Ohio-836, ¶ 9, quoting *State v. Kane,* 10th Dist. No. 16AP-781, 2017-Ohio-7838, ¶ 9.

{¶ 8} When an individual who has taken a direct appeal files a postconviction relief petition, it must be filed "no later than three hundred sixty-five days after the date on which the trial transcript is filed in the court of appeals." R.C. 2953.21(A)(2)(a). In this case, the trial transcript was filed in Black's direct appeal on November 6, 2019. Black filed his petition to vacate his convictions on February 8, 2022; because this was more than one year after the transcript was filed in his direct appeal, the petition was untimely.

{¶ 9} "[A] court 'may not entertain' an untimely or successive postconviction relief petition unless the requirements of R.C. 2953.23(A)(1) or (2) are met." *Vinson* at ¶ 9, quoting R.C. 2953.23(A). "Therefore, a petitioner's failure to satisfy R.C. 2953.23(A) deprives a trial court of jurisdiction to adjudicate the merits of an untimely or successive postconviction petition." *State v. Apanovitch*, 155 Ohio St.3d 358, 2018-Ohio-4744, ¶ 36. Whether a trial court has jurisdiction over an untimely petition for postconviction relief is a question of law, which we review de novo. *Vinson* at ¶ 9.

## IV. LEGAL ANALYSIS

{¶ 10} In his first assignment of error, Black argues the trial court erred by denying his petition for postconviction relief without conducting an evidentiary hearing. Because Black's petition was untimely, the trial court only had jurisdiction to consider the merits of

the petition if the requirements of R.C. 2953.23(A)(1) or (2) were met. *Apanovitch* at ¶ 36. Black did not rely on DNA testing to establish his innocence; therefore, R.C. 2953.23(A)(2) is not relevant to his petition and we will focus solely on whether R.C. 2953.23(A)(1) was satisfied. Under R.C. 2953.23(A)(1), a petitioner must demonstrate that he was "unavoidably prevented from discovery of the facts upon which the petitioner must rely to present the claim for relief" or that the United States Supreme Court recognized a new state or federal right that applies retroactively to him. R.C. 2953.23(A)(1)(a). The petitioner also must establish by clear and convincing evidence that, but for the alleged constitutional error at trial, no reasonable factfinder would have found him guilty. R.C. 2953.23(A)(1)(b).

{¶ 11} Black asserts he was unavoidably prevented from discovering the facts alleged in support of the claims asserted in his petition for postconviction relief. " 'The "facts" contemplated by R.C. 2953.23(A)(1)(a) are the historical facts of the case, which occurred up to and including the time of conviction.' " *Vinson* at ¶ 16, quoting *State v. Turner*, 10th Dist. No. 06AP-876, 2007-Ohio-1468, ¶ 11. " 'The phrase "unavoidably prevented" in R.C. 2953.23(A)(1)(a) means that a defendant was unaware of those facts and was unable to learn of them through reasonable diligence.' " *Id.*, quoting *Turner* at ¶ 11. Thus, the exception provided in R.C. 2953.23(A)(1)(a) involves newly discovered evidence. *Id.*

{¶ 12} Black generally alleged in his petition that A.S.'s trial testimony was false. He asserted A.S. knew him before the incident and that they had done drugs together in the past. Black claimed A.S. approached him on the day of the incident and agreed to have sex in exchange for drugs. Black claimed he told his trial counsel about witnesses who would testify to the existence of a friendly relationship between him and A.S. In the petition, Black claimed there were affidavits from witnesses at the Sandpebble and from A.S.'s boyfriend,

but no such affidavits were attached to his petition.[1]  Black alleged there was surveillance video from the Sandpebble or the surrounding area that would exonerate him.  Black also asserted there was exculpatory material contained on a state laptop computer.  Black claimed his trial counsel failed to investigate the facts of the case or subject the state's evidence to meaningful adversarial testing.

{¶ 13} On appeal, Black argues he was unavoidably prevented from discovering the facts asserted in support of his petition due to the state's withholding of exculpatory evidence and his trial counsel's failure to investigate and obtain the evidence on which he now relies.

{¶ 14} Black asserts the state failed to produce two types of exculpatory evidence: (1) surveillance video from the Sandpebble and surrounding buildings and (2) video or audio evidence contained on a state laptop computer that contradicted A.S.'s testimony.  As discussed more fully below, Black has failed to demonstrate that any surveillance video existed.  Black claims there were surveillance cameras on the exterior of the Sandpebble and nearby buildings.  Black does not assert, however, that he became aware of the existence of those purported cameras after his trial.  Thus, Black would have known at the time of his trial that these alleged cameras existed.  Similarly, the trial transcript demonstrates that an audio recording was played outside the presence of the jury to refresh A.S.'s recollection of her prior statements.  That recording appears to be the evidence contained on a state laptop computer that Black claims was withheld.  The record indicates the state produced audio recordings of witness interviews in discovery.  Because a portion

---

[1] The only affidavits attached to the petition were made by Black and the "jailhouse lawyer" who assisted Black in preparing the petition.

of the recording was played to A.S. during the trial, Black necessarily was aware of this evidence at the time of trial.

{¶ 15} Other than the alleged witness affidavits, it is apparent that all the facts alleged in Black's petition were known or readily available to him at the time of trial. *See Vinson* at ¶ 17 ("The facts supporting appellant's claim that the search warrant was defective were, therefore, readily available to appellant prior to her prosecution and throughout the criminal proceedings."); *see also State v. Teitelbaum*, 10th Dist. No. 19AP-137, 2019-Ohio-3175, ¶ 14 (concluding petitioner was not unavoidably prevented from discovery of the facts relied on in support of his claim because the fact that no warrant had been used to obtain cell phone site location was apparent at the time of trial). Regarding the alleged witness affidavits, Black's petition did not identify the purported witnesses or provide any information about the contents of the alleged affidavits, and none of the alleged affidavits were attached to the petition. Therefore, Black fails to demonstrate that these affidavits contained any newly discovered evidence. Moreover, the trial court had no basis to determine the credibility of these affidavits. *See State v. Calhoun*, 86 Ohio St.3d 279, 285 (1999) (setting forth factors to be considered in assessing credibility of supporting affidavits in postconviction relief proceedings).

{¶ 16} Black failed to demonstrate that he was unavoidably prevented from discovery of the facts relied upon in his petition; accordingly, we need not determine whether he presented clear and convincing evidence that but for the alleged constitutional error no reasonable factfinder would have found him guilty. *See Turner* at ¶ 18 ("Because the two prongs set forth in R.C. 2953.23 are stated in the conjunctive, and we have found appellant failed to satisfy the first prong under R.C. 2953.23(A)(1)(a), we need not address whether appellant presented clear and convincing evidence demonstrating that no

reasonable fact finder would have found him guilty in the absence of the alleged constitutional error, pursuant to the second prong in R.C. 2953.23(A)(1)(b)."). Because Black's petition was untimely and he failed to satisfy the requirements of R.C. 2953.23(A)(1), the trial court lacked jurisdiction to consider the merits of the petition and did not err by denying it without an evidentiary hearing. Accordingly, we overrule Black's first assignment of error.

{¶ 17} Notwithstanding our conclusion that the trial court lacked jurisdiction over Black's petition, we will briefly consider the arguments asserted in support of his second and third assignments of error.

{¶ 18} In his second assignment of error, Black asserts the trial court erred by denying his petition because the state withheld exculpatory evidence. Black alleges there were surveillance cameras inside and outside the Sandpebble and on the surrounding buildings, including an exterior camera pointed toward the open field A.S. crossed to access the Sandpebble. Black argues the police necessarily would have obtained video recordings from those cameras as part of their investigation. He claims the video recordings would have shown A.S. voluntarily approach him in the open field while he was smoking drugs and engage in sexual acts with him in exchange for drugs. Black alleges his rights to due process and a fair trial were violated by the state's failure to disclose this video surveillance evidence.

{¶ 19} "[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). *See also State v. Johnston*, 39 Ohio St.3d 48 (1988), paragraph four of the syllabus (following *Brady*). To establish a *Brady* violation, a

defendant must demonstrate that: (1) the prosecution withheld evidence, (2) the defense was not aware of the evidence, and (3) the withheld evidence was material and exculpatory. *State v. Hawk*, 10th Dist. No. 21AP-265, 2021-Ohio-4533, ¶ 20. *See also State v. Bethel*, __ Ohio St.3d __, 2022-Ohio-783, ¶ 19, quoting *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999) (" 'There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued.' ").

{¶ 20} Implicit within the first element of a *Brady* claim is that the evidence allegedly withheld must have actually existed.[2] In this case, there is nothing other than Black's unsupported allegations to establish that there was any video evidence from the area around the Sandpebble. The police detective who investigated the case testified at trial that he did not look for surveillance cameras around the open field. An item that could be a surveillance camera can be seen on one of the crime scene area photos introduced at trial. However, even if the item visible in that photograph was a surveillance camera, there is no evidence it was operable or what was within the range of the camera. The investigating detective testified that the photo depicted the front of a neighboring building and that the open field area where the assault occurred was behind the building. Black has not provided any evidence beyond his bare assertions to affirmatively demonstrate that there were any surveillance cameras in the area or that any video evidence relevant to the charges against him existed.

---

[2] A defendant may allege a *Brady* violation based on loss or destruction of exculpatory evidence; however, in those cases the evidence must have actually existed at some point. *See, e.g., State v. Walker*, 10th Dist. No. 20AP-95, 2022-Ohio-1684, ¶ 34.

{¶ 21} The Third District Court of Appeals rejected a similar claim, in which a defendant asserted a *Brady* violation occurred when the prosecutor failed to disclose a surveillance tape of the crime scene. *State v. Lester*, 3d Dist. No. 2-07-23, 2007-Ohio-5627, ¶ 15. The appellate court noted the appellant provided no proof that such a surveillance tape actually existed and concluded it could not find a *Brady* violation where the allegedly exculpatory evidence did not exist. *Id.* Likewise in this case, Black cannot establish a *Brady* violation based solely on his unsupported assertion that exculpatory surveillance videos *could have* existed without some evidence to suggest that such videos actually did exist.

{¶ 22} Accordingly, we overrule Black's second assignment of error.

{¶ 23} Black asserts in his third assignment of error that the trial court erred by denying his petition because he was denied the effective assistance of counsel. Black claims his trial counsel failed to investigate or present a meaningful defense on his behalf. Black alleges he told his trial counsel that the sexual encounter with A.S. was consensual and that he helped A.S. sell her purse to the bartender at the Sandpebble. Black maintains he advised his counsel about these events so that counsel could obtain surveillance video from in and around the Sandpebble. Black further alleges he gave his trial counsel the names of individuals who were familiar with the friendly relationship between him and A.S. and could testify about events on the relevant dates. Black claims his trial counsel's failure to obtain surveillance video or subpoena favorable witnesses, along with the advice not to testify on his own behalf at trial, constituted ineffective assistance.

{¶ 24} The state argues Black's ineffective assistance of counsel claim is barred by res judicata because he was represented by different counsel in his direct appeal and could have raised it as part of that appeal. However, Black's claim turns in part on what he allegedly told his trial counsel, which would not be contained in the record on direct appeal.

"When allegations of ineffective assistance of counsel hinge on facts not appearing in the record, the proper remedy is a petition for post-conviction relief rather than a direct appeal." *State v. Davis*, 10th Dist. No. 05AP-193, 2006-Ohio-5039, ¶ 19. *See also State v. Coleman*, 85 Ohio St.3d 129, 134 (1999) ("Any allegations of ineffectiveness based on facts not appearing in the record should be reviewed through the postconviction remedies of R.C. 2953.21."). Therefore, Black's ineffective assistance claim was properly brought as part of his postconviction relief petition.

{¶ 25} A defendant asserting ineffective assistance of counsel must "demonstrate that his trial counsel's performance was so deficient that it was unreasonable under prevailing professional norms." *State v. Battle*, 10th Dist. No. 06AP-863, 2007-Ohio-1845, ¶ 13. The defendant also must establish a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *Id.*

{¶ 26} "In a petition for post-conviction relief asserting ineffective assistance of counsel, 'the petitioner bears the initial burden to submit evidentiary documents containing sufficient operative facts to demonstrate the lack of competent counsel and that the defense was prejudiced by counsel's ineffectiveness.' " *Id.* at ¶ 12, quoting *State v. Jackson*, 64 Ohio St.2d 107 (1980), syllabus. " 'General conclusory allegations to the effect that a defendant has been denied effective assistance of counsel are inadequate as a matter of law to impose an evidentiary hearing.' " *Id.*, quoting *Jackson* at 111.

{¶ 27} In *Battle*, the appellant, who had been convicted of multiple offenses stemming from a robbery, filed a postconviction relief petition asserting ineffective assistance of counsel. *Id.* at ¶ 3, 6. The petition claimed trial counsel was ineffective by failing to call or contact certain witnesses; the petition included affidavits from the appellant and four other individuals containing assertions about the appellant's

whereabouts on the evening of the robbery. *Id.* at ¶ 6, 15. The trial court dismissed the petition without a hearing. *Id.* at ¶ 7. On appeal, this court affirmed the trial court's decision. *Id.* at ¶ 28. We held that the appellant's own self-serving affidavit was insufficient to compel a hearing, and further noted that appellant's affidavit failed to explain whether he informed his counsel about the witnesses in time to investigate their potential testimony. *Id.* at ¶ 16. We concluded there was "nothing to indicate that appellant's trial counsel did not investigate these matters, but instead, made a strategic decision not to call these witnesses." *Id.* Further, we concluded that, even if the witnesses had testified at trial, there was not a reasonable probability of a different result because of the overwhelming evidence presented by the prosecution. *Id.* at ¶ 17.

{¶ 28} In this case, Black filed a self-serving affidavit in which he claimed he told his trial counsel about potential witnesses and evidence in his favor. Black averred that his trial counsel told him that the potential witnesses were not relevant to the case; this suggests Black's trial counsel made a strategic decision not to call these individuals as witnesses at trial. Black's affidavit alone was insufficient to compel a hearing on the postconviction petition. *Id.* at ¶ 16. Further, unlike in *Battle*, Black's petition did not include any affidavits from the alleged potential witnesses and failed to even identify them. Black generally alleged the witnesses could give favorable testimony, but that general assertion alone did not demonstrate a reasonable probability of a different result if those witnesses had been called to testify at trial. Therefore, we cannot conclude the trial court erred by failing to grant a hearing on Black's ineffective assistance of counsel claim.

{¶ 29} Accordingly, we overrule Black's third assignment of error.

**V. CONCLUSION**

{¶ 30} For the foregoing reasons, we overrule Black's three assignments of error and affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

LUPER SCHUSTER, P.J., and KLATT, J., concur.

————————————